# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------------
SECURITIES AND EXCHANGE           )
COMMISSION,                       )     **Document Electronically Filed**
                                  )
      Plaintiff,              )     Case No. 3:20-cv-02104
                                  )
      v.                      )     **Honorable Michael A. Shipp**
                                  )
JOHN D. FIERRO                    )     **Motion Day: July 6, 2020**
and                               )
JDF CAPITAL, INC.,                )     ORAL ARGUMENT REQUESTED
                                  )
      Defendants.             )
---------------------------------------------------------------


**DEFENDANTS JDF CAPITAL, INC., AND JOHN D. FIERRO'S
MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ...................................................................................ii-iv

MEMORANDUM OF LAW .........................................................................................1

I.      INTRODUCTION ................................................................................................1

II.     THE COMMISSION'S ALLEGATIONS ..........................................................2

III.    ARGUMENT........................................................................................................3

        A.    The SEC is an Ordinary Litigant When it Invokes the Processes of the Courts ..................................................................................................................4

        B.    Standard of Review – Motions to Dismiss Under Rule 12(b)(6)…………………..4

        C.    JDF Capital Acted as a Trader, as Opposed to a Dealer, and the Commission Has Not Alleged Otherwise……………………………………………………………..5

                1.    The SEC has Long Recognized the Distinction Between "Dealers" and "Traders"……………………………………………………………………5

                2.    At Least One Federal Court Has Analyzed the "Dealer" Definition Utilizing the Factors Set Forth in SEC No-Action Letters …………………………...9

        D.    The Commission Has Not Adequately Alleged Control Person Liability Against Mr. Fierro Because the Commission Has Failed to Allege a Primary Cause of Action Against JDF Capital Under Section 15(A) ………………………………10

        E.    Due Process Does Not Permit the SEC to Reverse Existing Guidance Through an Enforcement Action…………………………………………………………11

IV.    CONCLUSION ……………………………………………………………..13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                          **Page**

*Acqua Wellington North American Equities Fund, Ltd.*,
    SEC No-Action Letter, 2001 SEC No-Act. LEXIS 756 (Oct. 11, 2001)……………………..8

*Alaska Prof'l Hunters Ass'n v. FAA*,
    177 F.3d 1030 (D.C. Cir. 1999)……………………………………………………………..12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ……………………………………………………………………….4

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007)……………………………………………………………….4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………………………………..4

*Burton Securities*,
    SEC No-Action Letter, 1977 SEC No-Act. LEXIS 2871 (Dec. 5, 1977)………………….8, 9

*Davenport Management, Inc.*,
    SEC No-Action Letter, 1993 SEC No-Act. LEXIS 624 (Dec. 5, 1993)……………………8, 9

*Fairfield Trading Corporation*,
    SEC No-Action Letter, 1988 WL 233618 (S.E.C. No-Action Letter) (Jan. 10, 1988)……….9

*Garner v. Wolfinbarger*,
    56 F.R.D. 499 (S.D. Ala. 1972)…………………………………………………….....6

*Gordon Wesley Sodorff, Jr.*,
    Admin. File Proc. No. 3-7390, 1992 SEC LEXIS 2190 (Sept. 2, 1990)…………………..7, 8

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ……………………………………………………………………...11

*In re Audible Inc. Sec. Litig.*,
    2007 WL 1062966 (D.N.J. April 3, 2007)…………………………………………………11

*In re Rockefeller Center Properties, Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)……………………………………………………………….11

*Jones v. Intelli-Check, Inc.*,
    2003 WL 21783693 (D.N.J. July 30, 2003)………………………………………………11

# TABLE OF AUTHORITIES
# CONTINUED

**Cases**                                                                                               **Page**

*National Council of Savings Institutions*,
   SEC No-Action Letter, 1986 SEC No-Act. LEXIS 2609 (July 27, 1986)……………………….5

*NYCERS v. SEC*,
   45 F.3d 7 (2d Cir. 1995)………………………………………………………………………6

*Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*,
   266 F.Supp.3d 1154 (E.D. Wis. 2017)………………………………………………………11

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (2d Cir. 2010)…………………………………………………………………..4

*SEC v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y.2009)………………………………………………………………4

*SEC v. Federated Alliance Group*,
   1996 U.S. Dist. LEXIS 12499 (W.D.N.Y. Aug. 21, 1996)……………………………….9, 10

*SEC v. Lucent Techs. Inc.*,
   2005 WL 1206841 (D.N.J. May 20, 2005)……………………………………………………4

*SEC v. McGee*,
   895 F.Supp.2d 669 (E.D.Pa. 2012)…………………………………………………………....4

*SMF Holdings, Ltd. v. Banc. Of Am. Sec., LLC*,
   600 F.3d 1334 (11th Cir. 2010)………………………………………………………………6

*Thompson v. RelationServe Media, Inc.*,
   610 F.3d 628 (11th Cir. 2010)………………………………………………………………6

*Upton v. SEC*,
   75 F.3d 92 (2d Cir. 1996)……………………………………………………………………11

# TABLE OF AUTHORITIES
# CONTINUED

**Statutes & Rules**                                                                                   **Page**

15 U.S.C. § 78c(a)(5)……………………………………………………………………………..5

Securities Exchange Act of 1934 § 3(a)(5)……………………………………………………….5, 6, 9

Securities Exchange Act of 1934 § 15(a)……………………………………………………..*passim*

Securities Exchange Act of 1934 § 20(a)……………………………………………………………10, 11

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………….*passim*

**Other Authorities**

*Definition of Terms in and Specific Exemption for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934* ("Proposed Dealer Exemption Rule"),
    Exchange Act Release No. 46745 (Oct. 30, 2002), 67 Fed. Reg. 67,496, 67,498
    (Nov. 5, 2002)…………………………………………………………………………...6, 7

Fast Answers: No Action Letters (Mar. 23, 2017),
    https://www.sec.gov/fast-answers/answersnoactionhtm.html……………………………..6

*Guide to Broker-Dealer Registrations,* "Who is a Dealer",
    http://www.sec.gov/divisions/marketreg/bdguide.htm#lI (April 2008)…………………….7

Michael S. Piwowar, Commissioner, U.S. Securities and Exchange Commission, *Remarks to the Securities Enforcement Forum* (Oct. 14, 2014),
    https://www.sec.gov/news/speech/2014-spch101414msp……………………………11, 12

Robert L.D. Colby, Lanny A. Schwartz, and Zachary J. Zweilhorn, *Broker-Dealer Regulation*,
    Chapter 2 § 2.3.1. (Practicing Law Institute)……………………………………………5, 6

Defendants JDF Capital, Inc. ("**JDF Capital**") and John D. Fierro ("**Mr. Fierro**"), by and through their undersigned counsel, hereby respectfully move this Court to dismiss Plaintiff Securities and Exchange Commission's ("**Plaintiff**," "**SEC**," or the "**Commission**") Complaint (Docket Entry 1), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that both of the Complaint's two counts fail to state a claim against either JDF Capital or Mr. Fierro upon which relief may be granted.  In furtherance of the same, JDF Capital and Mr. Fierro respectfully state as follows:

**I.     INTRODUCTION**

This is a matter wherein Plaintiff has charged JDF Capital and Mr. Fierro (collectively, "**Defendants**") with purportedly acting as unregistered securities dealers in violation of the federal securities laws for simply purchasing and selling microcap securities, and has charged Mr. Fierro with purportedly acting as a control person over JDF Capital in connection with its purportedly violative conduct.  With sparse factual allegations – which appear to present a case of first impression in this Circuit – the Commission is attempting to expand the registration requirements under the Securities Exchange Act of 1934 (the "**Exchange Act**") far beyond the scope for which they were intended. More importantly, the Commission's claims directly contrast long-established guidance set forth in prior SEC pronouncements, which make a distinction between a "trader," who is <u>not</u> required to be licensed with the Commission, and a "dealer," who is subject to Commission registration.  If the Commission's attempt in this matter is successful, then every day trader, hedge fund, or other market participant who purchased and sold securities for a profit would be acting as an unregistered dealer and subject to sanctions. Such an outcome is unjust on its face because Congress, and not the federal courts, is the proper forum for the Commission to engage in rulemaking.  Indeed, due process forbids the Commission

from doing so.  As set forth herein, Counts I and II of the Commission's Complaint fail to state a cause of action against either JDF Capital or Mr. Fierro upon which relief may be granted.

## II.   THE COMMISSION'S ALLEGATIONS

Plaintiff's allegations in its Complaint relevant to this Motion to Dismiss are as follows: JDF Capital and Mr. Fierro operate a business in New Jersey wherein they buy convertible notes from penny stock issuers, convert those notes into stock, and then sell that stock into the market. Complaint at ¶10.  During the time period at issue in this matter, JDF Capital and Mr. Fierro purchased convertible notes from over 20 issuers and sold almost 6.5 billion shares of stock into the public market, with such sales resulting in $2.3 million in profits.  *Id*.  Mr. Fierro, JDF Capital's President, personally negotiated the terms of the convertible notes that JDF Capital purchased, with such negotiations enabling JDF Capital to receive "very favorable terms."  *Id*. at ¶11.  Defendants "held themselves out to the public as being willing to buy convertible notes at a regular place of business," "operated a website for JDF [Capital] that advertised its business to issuers[,]" and "also attended, and sometimes sponsored, conferences at which they solicited . . . issuers in person."  *Id*. at ¶12.  Defendants structured their acquisition of the convertible notes, conversion of the notes, and subsequent sales of the shares in a manner to comply with the federal securities laws.  *Id*. at ¶14.  Such business was "very lucrative."  *Id.* at ¶17.  Based upon the foregoing allegations, the Commission has charged JDF Capital and Mr. Fierro with acting as unregistered securities dealers in violation of Section 15(a) of the Exchange Act (Count I), and has charged Mr. Fierro with acting as a control person over JDF Capital in connection with such activities (Count II).  *Id*. at ¶¶27-35.

For the purposes of the instant motion, it is important to note the absence of certain allegations in the Commission's Complaint.  For example, the Complaint correctly does not

allege that JDF Capital or Mr. Fierro <u>ever</u> (a) advertised or otherwise held themselves out publicly as willing to buy or sell securities for or from its own account on a continuing basis (contemporaneously), (b) purchased or sold securities as principal from or to customers, (c) carried a dealer inventory in securities, (d) quoted a market in any securities, (e) provided investment advice, (f) extended or arranged for the extension of credit in connection with securities transactions, (g) ran a book of repurchase and/or reverse repurchase agreements, (h) used an interdealer broker for securities transactions, (i) loaned securities to customers, (j) issued or originated securities, (k) guaranteed contract performance or indemnified parties for any loss or liability from the failure of a transaction to be successfully consummated, or (l) participated in a selling group or acted as an underwriter.  As detailed more fully herein, the absence of such allegations is significant in connection with this Court's review of the conclusory allegations in the Commission's Complaint.

### III.     ARGUMENT

In this matter, the Commission is essentially attempting to cast JDF Capital and Mr. Fierro in the same mold as a Merrill Lynch, UBS, or the numerous other securities dealers who buy and sell securities contemporaneously, make markets in securities issued by public companies, and engage in numerous other activities common to securities dealers.  In doing so, the Commission is now attempting to use this Court to reverse its longstanding public policy against taking enforcement actions against "traders," who simply buy and sell securities for their *own* benefit and self-interest but who are not in the business of providing services to third-parties. As set forth below, the Commission's Complaint is vague and conclusory, and fails to meet the requirements of Rule 12(b)(6).

### A. THE SEC IS AN ORDINARY LITIGANT WHEN IT INVOKES THE PROCESSES OF THE COURTS

As a preliminary matter – and at the risk of stating the obvious – although the Commission is a governmental agency, once it becomes a litigant and seeks redress from the court, it is subject to the same pleading and discovery standards as any other litigant. *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y.2009) ("Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure."). Accordingly, the Commission is not entitled to any leniency from this Court for its pleading deficiencies detailed herein.

### B. STANDARD OF REVIEW – MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint that fails to plead facts sufficient to "state a claim to relief that is plausible on its face" should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). While a court is required to "accept well-pled allegations as true for the purposes of the motion [to dismiss], it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *SEC v. Lucent Techs. Inc.*, 2005 WL 1206841, at **4 (D.N.J. May 20, 2005); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court need not consider "legal conclusion[s] couched as factual allegations."). To determine the sufficiency of a complaint under *Twombly* and *Ashcroft*, the Third Circuit follows the following sufficiency test: "First, we identify the elements of the plaintiff's cause of action. Second, we discard conclusory statements, leaving only factual allegations. Third, assuming the truth of the well-pleaded factual allegations, we determine whether they plausibly give rise to an entitlement for relief." *SEC v. McGee*, 895 F.Supp.2d 669, 681 (E.D.Pa. 2012) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). As further articulated herein, the

Commission has failed to state a claim against either JDF Capital or Mr. Fierro in its Complaint, and dismissal of such Complaint is appropriate.

### C. JDF Capital Acted as a Trader, as Opposed to a Dealer, and The Commission has Not Alleged Otherwise

#### 1. The SEC Has Long Recognized the Distinction Between "Dealers" and "Traders"

Count I of the Complaint alleges that Defendants acted as unregistered securities dealers. Complaint at ¶¶27-30. Section 3(a)(5)(A) of the Exchange Act defines "dealer" as, in pertinent part, "any person engaged in the business of buying and selling securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for such person's own account through a broker or otherwise." 15 U.S.C. §78c(a)(5)(A). The primary factors in determining whether a person is a "dealer" are whether the person trades for his or her own account and whether he or she does so "as part of a regular business." Robert L.D. Colby, Lanny A. Schwartz, and Zachary J. Zweilhorn, *Broker-Dealer Regulation*, Chapter 2, at §2.3.1.A. (Practicing Law Institute, 2016) (relevant portion attached hereto as "Exhibit A"). Unless an exemption is available, dealers must register with the SEC pursuant to Section 15(a) of the Exchange Act.

Section 3(a)(5)(B) of the Exchange Act contains an exemption for "a person that buys or sells securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for such person's own account, either individually or in a fiduciary capacity, but not as part of a regular business." 15 U.S.C. §78c(a)(5)(B). The SEC has taken the position that a person must buy and sell securities – or be willing to do so – contemporaneously to be considered a "dealer." *See, e.g.*, National Council of Savings Institutions, SEC No-Action Letter, 1986 SEC No-Act. LEXIS 2609 (July 27, 1986)

5

(discussing the distinction between a "dealer" and "trader") (attached hereto as "Exhibit B").[1] Commentators have noted that "[t]his approach is necessary to distinguish dealers from investors who buy and sell securities for investment purposes, but sometimes hold the position for only a short period of time." Colby, at §2.3.1.B, at 2-58.

"Traders" are excluded from the definition of a "dealer" by Section 3(a)(5)(B). The dealer-versus-trader distinction has provided a framework for distinguishing those that fall within the definition of "dealer," as opposed to "traders" (who also buy and sell securities for their own accounts but do not fall within the definition of a "dealer."). In 2002, for example, the Commission proposed rules regarding bank securities activities under the Exchange Act as part of its implementation of the Gramm-Leach-Bliley Act of 1999. *See* Definition of Terms in and Specific Exemption for Banks, Savings Associations, and Savings Banks Under Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934 ("**Proposed Dealer Exemption Rule**"), Exchange Act Release No. 46745 (Oct. 30, 2002), 67 Fed. Reg. 67,496, 67,498 (Nov. 5, 2002) (the "**Release**") (attached hereto as "Exhibit C"). In the Release, the SEC discussed the dealer-versus-trader distinction at some length, describing the distinction as follows:

> As developed over the years, the dealer/trader distinction recognizes that dealers normally have a regular clientele, hold themselves out as buying or selling securities at a regular place of business, have a regular turnover of

---

[1] An SEC No-Action Letter is a letter issued by the SEC Staff providing that it will not prosecute an individual or entity based upon specific facts and circumstances set forth in the individual's or entity's request. Fast Answers: No Action Letters (Mar. 23, 2017), *available at* https://www.sec.gov/fast-answers/answersnoactionhtm.html; *see also Garner v. Wolfinbarger*, 56 F.R.D. 499, 503 (S.D. Ala. 1972) (An SEC No-Action Letter is "a letter from the SEC staff that it would not recommend prosecution in the event" that certain actions were or were not taken by the requestor).

Some federal courts have stated while SEC No-Action Letters are not afforded the same level of deference as rule-making orders, they are nonetheless treated as "persuasive." *NYCERS v. SEC*, 45 F.3d 7, 13 (2d Cir. 1995). Indeed, the Eleventh Circuit has looked to SEC No-Action Letters in resolving disputes over terminology and definitons that are germane to the securities industry. *SMF Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1339 (11th Cir. 2010); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010).

> business (or participate in the distribution of new issues), and generally transact a substantial portion of their business with investors (or, in the case of dealers who are market makers, principally trade with other professionals). **In contrast, traders have less regular volume, do not handle others' money or securities, do not make a market, and do not furnish the dealer-type services such as rendering investment advice, extending or arranging credit, or lending securities.**

Proposed Dealer Exemption Rule at *6 (emphasis added). As the SEC's own guidance makes clear, dealers make money by helping others through securities transactions, such as by handling investor monies or securities, making markets, extending credit to investors, or giving investment advice to investors. *See Guide to Broker-Dealer Registrations,* "Who is a Dealer" ("[I]ndividuals who buy and sell securities for themselves generally are considered traders not dealers"), http://www.sec.gov/divisions/marketreg/bdguide.htm#lI (April 2008).

The Commission has not alleged – nor can it allege – that Defendants engaged in any of the conduct that would render them a dealer pursuant to the Commission's own standards and pronouncements. Neither JDF Capital nor Mr. Fierro are alleged to have handled monies for third-parties, made markets in any security, provided advice, or lent monies. Indeed, lest there be any confusion over the distinction between a "dealer" and "trader," and what constitutes "a regular business" for purposes of the definition, the SEC explained it in *Gordon Wesley Sodorff, Jr.* (Admin. File Proc. No. 3-7390), 1992 SEC LEXIS 2190 (Sept. 2, 1990), which was an appeal from a decision by a National Association of Securities Dealer's Disciplinary Panel. In *Sodorff*, the Commission stated that:

> The definition of dealer contains an exclusion for activity that is not part of "a regular business." **The purpose of this phrase is to "exclude from the definition of 'dealer' members of the public who buy and sell securities for their own account as ordinary traders," even though their trading may involve more than isolated transactions**. Unlike an investor or trader, Sodorff's profits did not result from appreciation in the value of the securities,

7

> but rather from his markup over the price he paid. Sodorff solicited investors and handled their money and securities, rendered investment advice, and sent subscription agreements to investors for their review and signature, all of which are characteristics of dealer activity.

*Id.* at *18 (emphasis added). In reference to these activities, the SEC stated: "[t]hese factors distinguish the activities of a dealer from those of a private investor or trader." *Id*. at n.27; *see also* Burton Securities, SEC No-Action Letter, 1977 SEC No-Act. LEXIS 2871 at *2 (Dec. 5, 1977) ("[A] person who buys and sells securities for his own account in the capacity of a 'trader' or individual investor is generally not considered to be 'engaged in the business' of buying and selling securities . . . ."). As noted herein, the Commission in this matter has only alleged that JDF Capital and Mr. Fierro traded for JDF Capital's own account, and has not alleged that JDF Capital or Mr. Fierro provided any services to third-parties.

Similarly, in a number of SEC No-Action Letters concerning the requirement of dealer registration under Section 15(a), the Commission's Staff has stated that a person or entity would ***not*** be a "dealer" based on a consideration of the following factors, if it did not: (i) advertise or otherwise hold itself out publicly as willing to buy or sell securities for or from its own account on a continuing basis; (ii) purchase or sell securities as principal from or to customers; (iii) carry a dealer inventory in securities; (iv) quote a market in securities; (v) provide investment advice; (vi) extend or arrange for the extension of credit in connection with securities transactions; (vii) run a book of repurchase and reverse repurchase agreements; (viii) use an interdealer broker for securities transactions; (ix) lend securities to customers; (x) issue or originate securities; (xi) guarantee contract performance or indemnify the parties for any loss or liability from the failure of the transaction to be successfully consummated; and (xii) participate in a selling group or act as an underwriter. *See, e.g*., Acqua Wellington North American Equities Fund, Ltd., SEC No-Action Letter, 2001 SEC No-Act. LEXIS 756 (Oct. 11, 2001); Davenport Management, Inc.,

8

SEC No-Action Letter, 1993 No-Act LEXIS 624 (Apr. 13, 1993); Fairfield Trading Corporation, SEC No-Action Letter, 1988 WL 233618 (S.E.C. No-Action Letter) (Jan. 10, 1988); Burton Securities, SEC No-Action Letter, 1977 SEC No-Act. LEXIS 2871 (Dec. 5, 1977) (attached hereto as "Exhibit D" through "Exhibit G," respectively).

In this matter, the Commission has not alleged that Defendants engaged in any of the conduct set forth in this long-standing guidance. Indeed, nothing in the Complaint's allegations suggest that either JDF Capital or Mr. Fierro were anything other than simply self-interested market participants whose sole purpose was to buy convertible debt instruments, convert such instruments, and then liquidate the resulting shares for the purpose of making a profit for their benefit while managing their capital at risk. That does not trigger any of the factors set forth by the Commission through No-Action Letters or the guidance provided on its public website. The Commission has simply alleged, in conclusory fashion, that Defendants regularly engaged in buying convertible notes, converting such notes, and selling the resulting shares for JDF Capital's own account as "part of its regular business," without explaining how JDF Capital's business is part of a "regular business" for purposes of Section 3(a)(5), which defines "dealer" as well as exceptions to such definition. Such distinction is significant, as the phrase "regular business" is a term of art within the Commission's pronouncements and No-Action Letters. Such deficiency renders the Commission's allegation regarding "regular business" nothing more than a conclusory allegation, which fails to meet the standard required pursuant to Rule 12(b)(6) and renders the Complaint ripe for dismissal.

### 2. At Least One Federal Court Has Analyzed the "Dealer" Definition Utilizing the Factors Set Forth in SEC No-Action Letters

One of the only federal cases dealing with the dealer-trader distinction is *SEC v. Federated Alliance Group*, 1996 U.S. Dist. LEXIS 12499 (W.D.N.Y. Aug. 21, 1996). In

*Federated*, the Commission brought a case against the defendants for operating an unregistered government securities dealer. The court recognized that the definitional sections of the Exchange Act dealing with "dealer" have "not been the subject of extensive judicial examination and interpretation," and appropriately looked to the factors set forth in SEC No-Action Letters, essentially mirroring most of the twelve (12) factors identified herein. *Id*. at *8. The Commission argued that while the *Federated* defendants did not meet many of the factors, they nonetheless "made money by purchasing government securities and distributing them to individuals across the country. . . ." *Id*. The *Federated* Court found this argument unpersuasive, however, and concluded that accepting such argument would "excessively broad[en]" the "definition of a dealer" beyond that contemplated by the guidance provided in SEC No-Action Letters. According to the *Federated* Court, the Commission's position in the case "would embrace every securities trader who makes money through buying and selling securities." *Id*. In this matter, the Commission now seeks again to accomplish the same objective that it attempted, but failed to accomplish, in *Federated*. In a manner consistent with the *Federated* Court, this Court should reject the Commission's attempt as well.

### D. THE COMMISSION HAS NOT ADEQUATELY ALLEGED CONTROL PERSON LIABILITY AGAINST MR. FIERRO BECAUSE THE COMMISSION HAS FAILED TO ALLEGE A PRIMARY CAUSE OF ACTION AGAINST JDF CAPITAL UNDER SECTION 15(A)

Count II of the Complaint alleges that Mr. Fierro is liable as a control person under Section 20(a) of the Exchange Act for JDF Capital's violation of Section 15(a) of the Exchange Act. Complaint at ¶¶31-35. In order to state a claim for control person liability under Section 20(a) in this matter, the Commission must adequately allege (1) a primary violation of the federal securities laws; (2) that Mr. Fierro exercised general control over the operations of the primary violator; and (3) that Mr. Fierro possessed the power or ability to control the transaction(s) or

activity upon which the primary violation was predicated. *Jones v. Intelli-Check, Inc.*, 2003 WL 21783693, at *28 (D.N.J. July 30, 2003). In the Third Circuit, "it is well-settled that controlling person liability is premised on an independent violation of the federal securities laws." *In re Rockefeller Center Properties, Inc. Sec. Litig.*, 311 F.3d 198, 211 (3d Cir. 2002); *see also In re Audible Inc. Sec. Litig.*, 2007 WL 1062986, at *13 (D.N.J. April 3, 2007) (dismissing Section 20(a) claim at motion to dismiss stage for plaintiff's failure to adequately plead primary violation); *Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F.Supp.3d 1154, 1169 (E.D. Wis. 2017) (dismissing Section 20(a) claim at motion to dismiss stage for plaintiff's failure to adequately plead primary violation). In this matter, the Commission's failure to adequately allege a cause of action for JDF Capital's purported violation of Section 15(a) means that the Commission's secondary, derivative control person claim against Mr. Fierro under Section 20(a) should be dismissed.

### E. DUE PROCESS DOES NOT PERMIT THE SEC TO REVERSE EXISTING GUIDANCE THROUGH AN ENFORCEMENT ACTION

Due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Relying upon the *Grayned* Court's rationale, the Second Circuit has held that "we cannot defer to the Commission's interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation." *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) ("The Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public"). SEC Commissioner Michael S. Piwowar has articulated the same principal by noting that "due process starts with fundamental notions of fairness. Persons should be on notice as to what acts, or failures to act, constitute violations of the law and our regulations." *See* Michael S. Piwowar,

11

Commissioner, U.S. Securities and Exchange Commission, Remarks to the Securities Enforcement Forum (Oct. 14, 2014) ("**Remarks by Comm'r Piwowar**"), available at https://www.sec.gov/news/speech/2014-spch101414msp.  In this matter, the allegations in the Commission's Complaint against JDF Capital and Mr. Fierro are a stark contradiction to the Commission's prior guidance, and violate the due process requirement of reasonable notice.  Based upon the Commission's (and its Staff's) longstanding guidance, JDF Capital and Mr. Fierro had no notice – let alone <u>reasonable</u> notice – that the Commission would consider Defendants' alleged activity to require registration as a dealer under Section 15(a).  For the same reason, Mr. Fierro had no notice that his operation of JDF Capital's alleged activity would subject him to potential control person liability for any purported violation of Section 15(a).  None of the Complaint's allegations could have led one in JDF Capital's or Mr. Fierro's shoes to believe that they were engaging in any conduct that would require registration as a securities dealer.  As explained in detail above, none of the guidance set forth by the Commission or its Staff in pronoucements, SEC No-Action Letters, or even a "Q&A" on the Commission's own website, would suggest that either JDF Capital or Mr. Fierro acted in any manner other than that of a trader seeking to make a profit.  As the District of Columbia Circuit noted approximately twenty years ago, "[t]hose regulated by an administrative agency are entitled to 'know the rules by which the game will be played.'"  *See Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1035 (D.C. Cir. 1999) (internal citations omitted).  The Commission's Complaint against JDF Capital and Mr. Fierro violate due process, and the Commission's act of filing those claims is exactly the type of conduct that Commissioner Piwowar strongly critized in his speech about the fundamental importance of due process in Commission enforcement actions.  *See* Remarks by Comm'r Piwowar.

IV. **CONCLUSION**

In light of the foregoing arguments concerning the Commission's failure to allege sufficient facts to support its claims against Defendants, Defendants respectfully move this Court to dismiss the Commission's Complaint.

Dated: May 29, 2020

        Respectfully submitted,

        SALLAH ASTARITA & COX, LLC

By: _____
Mark J. Astarita, Esquire
60 Pompton Avenue
Verona, New Jersey 07044
Tel:    (973) 559-5566
Email:  mja@sallahlaw.com

/s/ Mark David Hunter_____
Mark David Hunter, Esquire
*Admitted Pro Hac Vice*
**Hunter Taubman Fischer & Li LLC**
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel:    (305) 629-1180
Fax:    (305) 629-8099
Email:  mhunter@htflawyers.com

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the aforementioned document was filed through the Court's CM/ECF system on May 29, 2020. Parties of record may obtain a copy through the Court's CM/ECF system. The undersigned certifies that no party of record requires service of documents through any means other than the CM/ECF system.

/s/ Mark J. Astarita_____
Mark J. Astarita, Esquire