**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

                v.

JOHN D. FIERRO, et al.,

                Defendants.

Civil Action No. 20-2104 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

       This matter comes before the Court upon Defendants John D. Fierro ("Fierro") and JDF Capital, Inc.'s ("JDF") (collectively, "Defendants") Motion to Dismiss Plaintiff Securities and Exchange Commission's ("SEC") Complaint. (ECF No. 12.) The SEC opposed (ECF No. 14) and Defendants replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion is denied.

### I.    BACKGROUND[1]

       This action arises out of Defendants' alleged violation of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a)(1), by acting as unregistered securities dealers. (Compl. ¶ 4, ECF No. 1.) Fierro, the president of JDF, "control[led] all aspects of the corporation, including its business plan and all transactions involving penny stock issuers

---

[1] For purposes of the instant Motion, the Court accepts as true and summarizes the factual allegations of the Complaint. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

and the purchase and sale of their securities." (*Id.* ¶¶ 5–6.) Defendants' business model involved purchasing convertible notes from penny stock issuers after negotiating highly favorable terms, holding the notes for at least six months, converting the notes into newly issued shares of stock at a substantial discount from the prevailing market price, and selling those newly issued shares into the public market at a significant profit. (*Id.* ¶¶ 2, 10; *see id.* ¶ 17 (listing specific examples of transactions).)

Between January 2015 and November 2017, Defendants purchased and converted more than fifty notes "from more than [twenty] penny stock issuers and sold almost 6.5 billion newly issued shares of the issuers' stock into the public market[,] generating approximately $2.3 million" in profits. (*Id.* ¶¶ 2, 10.) During that time, "Defendants held themselves out to the public as being willing to buy convertible notes at [their] regular place of business." (*Id.* ¶ 12.) In particular, Fierro "operated a website for JDF that advertised its business to issuers." (*Id.*) Additionally, Fierro hired and supervised independent contractors who solicited issuers that sold convertible notes to JDF. (*Id.*) "Fierro and others associated with JDF also attended, and sometimes sponsored, conferences at which they solicited penny stock issuers in person." (*Id.*) "Defendants obtained nearly all of the stock that they sold in their business directly from the issuers, through note conversions and not from purchases in the secondary market." (*Id.* ¶ 13.)

"In running JDF, Fierro enlisted the help of his brother-in-law, Mark Lefkowitz" ("Lefkowitz"), who "act[ed] as a 'consultant' for JDF." (*Id.* ¶ 19.) Lefkowitz "is a [f]ederal securities laws recidivist." (*Id.* ¶ 7.) The SEC has "barred Lefkowitz from associating with any broker or dealer for violating the antifraud and broker-dealer registration provisions of the [f]ederal securities laws." (*Id.*) The Financial Industry Regulatory Authority has also "barred Lefkowitz from associating with any member firm in any capacity." (*Id.*) As a consultant for JDF, Lefkowitz

"assist[ed] Defendants in acquiring convertible notes from penny stock issuers, determin[ed] when to convert the notes, and urg[ed] note issuers to make required SEC filings." (*Id.* ¶¶ 7, 19.) Lefkowitz "also infused $500,000 into JDF . . . which JDF used for its business operations." (*Id.* ¶ 19.)

On February 26, 2020, the SEC filed a two-count action, alleging: (1) Defendants violated Section 15(a) of the Exchange Act by acting as unregistered securities dealers; and (2) "control person" liability against Fierro under Section 20(a) of the Exchange Act. (*Id.* ¶¶ 27–35.) The SEC seeks to enjoin Defendants from acting as unregistered securities dealers and from participating in the offering of any penny stock. (*Id.* at 14.) The SEC also requests disgorgement and civil penalties. (*Id.* at 14–15.) On May 29, 2020, Defendants filed the instant Motion to Dismiss for failure to state a claim. (ECF No. 12.)

## II.    **LEGAL STANDARD**

Rule 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v.*

---

[2] All references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

3

*Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III.   DISCUSSION

### A.   The SEC Has Pled Sufficient Facts to State a Claim Under Section 15(a)

Defendants argue that they acted as traders, not dealers, and therefore did not need to register with the SEC. (Defs.' Moving Br. 5–10, ECF No. 13.)

"Section 15(a)(1) . . . makes it unlawful for a [dealer] to effect any transaction in, or to induce or attempt to induce the purchase of any security, unless such [dealer] is registered with the [SEC] or, in the case of a natural person, is associated with a registered broker-dealer." *SEC v. Cooper*, 142 F. Supp. 3d 302, 318 (D.N.J. 2015) (citations omitted). Section 3(a)(5)(A) defines "dealer" as "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(5)(A). Section 3(a)(5)(B), typically referred to as the "trader" exception, excludes from the definition of dealer any "person that buys or sells securities . . . for such person's own account, either individually or in a fiduciary

4

capacity, but not as part of a regular business." 15 U.S.C. § 78c(5)(B). The Exchange Act requires dealers, but not traders, to register with the SEC. 15 U.S.C. § 78o(a)(1).

Initially, the Court notes neither party cites any binding Third Circuit precedent addressing the dealer-trader distinction. Nor is the Court aware of any. In fact, another district court confronting a similar issue recently observed that "[t]he 'dealer' definition has not been subject to extensive judicial interpretation." *SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853, 858 (N.D. Ill. 2019). The Court, therefore, looks to other federal decisions, including *River North*, for guidance.

In *River North*, the SEC brought an enforcement action charging a defendant with violating Section 15(a)(1) by acting as an unregistered dealer. *Id.* at 857. The SEC alleged the defendant "bought and sold over [ten] billion shares of stock from more than [sixty-two] microcap issuers, and then quickly resold them to the investing public, receiving some $31 million in profit." *Id.* at 858. According to the defendant, "it acted as a trader, not a dealer, so Section 15(a)(1)'s registration requirement did not apply." *Id.*

In denying the defendant's motion to dismiss for failure to state a claim, the district court found that "from th[e SEC's alleged facts], it is more than plausible that [the defendant] meets the statutory 'dealer' definition." *Id.* The district court explained that although there is a dearth of case law interpreting "dealer," the "courts that have construed it generally require a 'certain regularity of participation in securities transactions.'" *Id.* (citations omitted). Moreover, the court explained that "dealer" is broadly defined because the "registration requirement is 'of the utmost importance in effecting the purposes of the Act,' as it enables the SEC to 'exercise discipline over those who may engage in the securities business,' and 'establishes necessary standards with respect to training, experience, and records.'" *Id.* (citation omitted). In reaching its decision, the court also rejected the defendant's request to determine whether it qualified as a dealer or trader by evaluating

"a laundry list of factors set forth in various SEC no-action letters and other guidance," noting those factors are neither exclusive nor controlling. *Id.* More fundamentally, the district court concluded that "whether and which [factors] are met is necessarily a fact-based inquiry best reserved for summary judgment or trial." *Id.* Since *River North*, at least one other district court has reached the same conclusion. *See SEC v. Keener*, No. 20-21254, 2020 WL 4736205, at * 4 (S.D. Fla. Aug. 14, 2020) (denying the defendant's motion to dismiss in a factually similar case and finding that it "need not ultimately resolve at this stage whether [the] [d]efendant is a dealer or trader—a legal determination better suited for a complete factual record").

Here, the Court finds *River North* and *Keener* persuasive, and denies Defendants' Motion predominantly for the reasons set forth in those cases. The Court adds the following comments. In their Moving Brief, Defendants argue that the SEC neither (1) explains how Defendants engaged in a "regular business" to qualify as a dealer, nor (2) "allege[s] that [they] engaged in any of the conduct set forth in" prior SEC no-action letters and other guidance.[3] (Defs.' Moving Br. 6–9.)

---

[3] Defendants point to twelve factors contained in a 2001 SEC no-action letter, which they assert are indicative of a dealer. Such letters are "issued by the SEC Staff providing that it will not prosecute an individual or entity based upon specific facts and circumstances set forth in the individual's or entity's request." (Defs.' Moving Br. 6 n.1 (citations omitted).) Those factors are:

> (i) advertise or otherwise hold itself out publicly as willing to buy or sell securities for or from its own account on a continuing basis; (ii) purchase or sell securities as principal from or to customers; (iii) carry a dealer inventory in securities; (iv) quote a market in securities; (v) provide investment advice; (vi) extend or arrange for the extension of credit in connection with securities transactions; (vii) run a book of repurchase and reverse repurchase agreements; (viii) use an interdealer broker for securities transactions; (ix) lend securities to customers; (x) issue or originate securities; (xi) guarantee contract performance or indemnify the parties for any loss or liability from the failure of the transaction to be successfully consummated; and (xii) participate in a selling group or act as an underwriter.

(*Id.* at 8 (citations omitted).)

According to Defendants, "*nothing* in the Complaint's allegations suggest that [they] were anything other than simply self-interested market participants." (*Id.* at 9 (emphasis added).) That is, perhaps, one way to construe the Complaint. In the Court's view, however, not only does the Complaint sufficiently explain how Defendants operated the business in which they bought and sold securities for their own account, but it also alleges some of the dealer factors that Defendants mistakenly suggest must be established at the pleading stage.

"[T]he primary indicia in determining that a person has 'engaged in the business' within the meaning of the term 'dealer' is that the level of participation in purchasing and selling securities involves more than a few transactions." *Keener*, 2020 WL 4736205, at * 4 (citation omitted); *see River North*, 415 F. Supp. 3d at 858. Here, the Complaint alleges that, over the course of more than two years, Defendants purchased and converted over fifty notes from more than twenty penny stock issuers and then sold the newly issued shares of stock into the public market, generating about $2.3 million in profits. (Compl. ¶¶ 2, 10.) The Court finds that "[f]rom this, it is more than plausible that [Defendants] meet[] the statutory 'dealer' definition." *River North*, 415 F. Supp. 3d at 858 (finding the complaint plausibly alleged the defendant met the statutory "dealer" definition where the defendant "bought and sold over [ten] billion shares of stock from more than [sixty-two] microcap issuers, and then quickly resold them to the investing public, receiving some $31 million in profit"); *Keener*, 2020 WL 4736205, at * 4 (reaching the same conclusion where the defendant, during a three-year period, "[bought] and convert[ed] over 100 convertible notes securities from more than 100 different microcap issuers," "sold into the public market approximately 17.5 billion shares of newly issued stock[,] . . . and made a $21.5 million profit").

Lastly, the Court declines Defendants' invitation to look past the express language of the statute and conduct a holistic review of several factors that may be indicative of a dealer. (*See*

Defs.' Moving Br. 7–8.) "[S]uch a fact-sensitive analysis [is] ill-suited for a motion to dismiss setting." *Keener*, 2020 WL 4736205, at * 4 (citing *River North*, 415 F. Supp. 3d at 858 (further noting that "these factors (and any decisions construing them) are not controlling" and that "[t]hey are neither exclusive, nor function as a checklist through which a court must march to resolve a dispositive motion.")). Indeed, the only case that Defendants cite in support of their argument that the factors should be analyzed took place at the summary judgment stage. (Defs.' Moving Br. 9–10 (citing *SEC v. Federated All. Grp. Inc.*, No. 93-895, 1996 WL 484036 (W.D.N.Y. Aug. 21, 1996)).) Moreover, contrary to Defendants' assertion, the SEC did allege some of the dealer factors. For example, the SEC alleges that Fierro held himself out as willing to buy or sell securities by operating a website that advertised his business to issuers, hiring employees to solicit issuers, and sponsoring conferences in which he solicited penny stock issuers in person. (Compl. ¶ 12.) The SEC also alleges Defendants purchased convertible notes (a form of short-term debt security) directly from issuers (third-party/customers). (*Id.* ¶ 10.) In short, Defendants cannot persuasively claim the SEC failed to allege they qualify as dealers. Moreover, performing a factual analysis to determine whether the trader exception applies is inappropriate at the pleading stage. The Court, accordingly, finds the SEC pled sufficient facts to state a claim under Section 15(a).

### B.    The SEC Has Sufficiently Pled a Claim for Control Person Liability

Defendants also argue that the SEC's failure to state a claim under Section 15(a) "means that the [SEC's] secondary, derivative control person claim against Fierro under Section 20(a) should be dismissed." (Defs.' Moving Br. 11.)

Section 20(a) imposes joint and several liability on any "person who, directly or indirectly, controls" any entity that violates the Exchange Act "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of

action." 15 U.S.C. § 78t(a). "Plaintiffs alleging a violation under Section 20(a) 'must plead facts showing: (1) an underlying violation by the company; and (2) circumstances establishing [the] defendant's control over the company's actions.'" *In re Cognizant Tech. Sol. Corp. Sec. Litig.*, No. 16-6509, 2020 WL 3026564, at *32 (D.N.J. June 5, 2020) (citation omitted). "The term 'control' has been defined as 'the possession, direct[ly] or indirectly, of the power to direct or cause the direction of the management and policies of a[n entity], whether through the ownership of voting securities, by contract, or otherwise.'" *Id.* (citation omitted).

Here, the Complaint satisfies both prongs of the control person test. As to prong two, the SEC alleges that Fierro is the president of JDF and he "control[led] all aspects of the corporation" during the relevant period as discussed above, "including its business plan and all transactions involving penny stock issuers and the purchase and sale of their securities." (Compl. ¶ 5.) Defendants do not contest that Fierro controlled JDF. Rather, Defendants argue that prong one is not met because the SEC failed to state a claim under Section 15(a). The Court, however, has already concluded otherwise. The Court, accordingly, finds that the SEC has sufficiently pled a claim for control person liability against Fierro.

## C.   Due Process

Defendants argue the Complaint's allegations "are a stark contradiction to the [SEC's] prior guidance" and therefore "violate the due process requirement of reasonable notice." (Defs.' Moving Br. 12.) According to Defendants, they "had no notice . . . that the [SEC] would consider [their] alleged activity to require registration as a dealer under Section 15(a)." (*Id.*)

A "punishment violates the Due Process Clause . . . if the statute . . . under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited." *FTC*

*v. Wyndham Worldwide Corp.*, 799 F.3d 236, 249 (3d Cir. 2015) (internal quotation marks and citation omitted). In *Wyndham Worldwide*, the Third Circuit explained:

> Lesser degrees of specificity are allowed in civil cases because the consequences are smaller than in the criminal context. The standards are especially lax for civil statutes that regulate economic activities. For those statutes, a party lacks fair notice when the relevant standard is so vague as to be no rule or standard at all.
>
> [W]here an agency administers a statute without any special authority to create new rights or obligations[,] . . . the courts give respect to the agency's view to the extent it is persuasive, but they retain the primary responsibility for construing the statute. As such, the standard of notice afforded to litigants about the meaning of the statute is not dissimilar to the standard of notice for civil statutes generally because the court, not the agency, is the ultimate arbiter of the statute's meaning.

*Id.* at 250–51 (internal quotation marks and citation omitted).

Here, the Court also rejects Defendants' due process argument for the reasons expressed in *River North* and *Keener*. That is, the definition of dealer under Section 3(a)(5) is broad and the Complaint suggests that Defendants are not amateur investors. *See River North*, 415 F. Supp. 3d at 859 ("The definition at issue is broad. . . . And the players in this case are not new to this field."); *Keener*, 2020 WL 4736205, at * 5 (same). Defendants do not contend that the statute is either vague or ambiguous. Rather, Defendants rely on a set of factors contained in SEC no-action letters and other guidance in support of their argument that they acted as traders, not dealers. As discussed, however, those factors are neither exclusive nor controlling and, more importantly, not appropriate for evaluation at the pleading stage. *River North*, 415 F. Supp. 3d at 858; *Keener*, 2020 WL 4736205, at * 4; *see SEC v. Almargarby*, --- F. Supp. 3d ----, No. 17-62255, 2020 WL 4783405, at * 5 (S.D. Fla. Aug. 17, 2020) ("SEC no-action letters are not binding pieces of legislation . . . . They are not rulings of the [SEC] or its staff on questions of law or fact and are not dispositive of the legal issues raised as to the applicability of the federal securities laws to a

given transaction." (internal quotation marks and citation omitted)). The Court, accordingly, does not find any violation of due process.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied. The Court will enter an Order consistent with this Memorandum Opinion.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE